IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


SHARON K. BURT,                          )
                                         )
                    Plaintiff,           )
                                         )
        vs.                              )
                                         )
CAROLYN COLVIN, Acting Commissioner,     )
Social Security Administration,          )
                                         )        No. 4:13-cv-0031-HRH
                    Defendant.           )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Titles

II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f.  Plaintiff has timely

filed her opening brief,[1] to which defendant has responded.[2]    Oral argument was not

requested and is not deemed necessary.

<u>Procedural Background</u>

Plaintiff is Sharon K Burt.  Defendant is Carolyn W. Colvin, acting Commissioner

of Social Security.

_____

[1]Docket No. 16.

[2]Docket No. 23.

On October 21, 2008, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on December 15, 2007. Plaintiff alleged that she was disabled because of depression, bipolar disorder, diabetes, diverticulitis, asthma, blind right eye, glaucoma in the left eye, and allergies. Plaintiff's applications were denied initially and upon reconsideration. A hearing before an administrative law judge (ALJ) was held on October 26, 2010, and on October 27, 2010, the ALJ issued a Fully Favorable Decision. The Appeals Council remanded plaintiffs' applications to the ALJ because it found that there was insufficient evidence to support a favorable decision. After a second hearing on March 23, 2012, the ALJ denied plaintiff's claims. On August 14, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 30, 2012 decision the final decision of the Commissioner. On September 27, 2013 plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

General Factual Background

Plaintiff was born on March 26, 1959. Plaintiff was 52 years old at the time of the second administrative hearing. Plaintiff has a GED. Plaintiff's past relevant work includes work as an activities coordinator, a social services aide, a bookkeeper, a craft demonstrator, a cashier, a hotel housekeeper, a stock clerk, and a sales clerk.

## The Administrative Decisions

### The October 27, 2010 ALJ Decision

The ALJ issued a written decision based on his oral findings of fact at plaintiff's October 26, 2010 hearing. The ALJ found plaintiff "disabled as of December 15, 2007 because your impairment or combination of impairments is so severe that you cannot perform any work."[3] The ALJ "found the limitations imposed by your impairments of depression, bipolar, diabetes, right eye blindness are so severe that you are unable to perform any work existing in significant numbers in both the national and regional economy."[4] The ALJ found that plaintiff was "incapable of maintaining the concentration, persistence and pace ... necessary to perform any job in today's competitive employment market."[5] The ALJ also noted that plaintiff had no past relevant work.[6]

### The Appeals Council Order

The Appeals Council remanded the matter for further proceedings because it was unable to determine what medical evidence supported the ALJ's finding that plaintiff was incapable of maintaining the concentration, persistence and pace necessary to perform any

---

[3]Admin. Rec. at 96.

[4]Admin. Rec. at 96.

[5]Admin. Rec. at 100.

[6]Admin. Rec. at 100.

work.[7]  The Appeals Council noted that because most of the evidence relating to plaintiff's mental impairments was from 2006 through 2008, there was "little evidence in the record illustrating the claimant's current functional limitations or abilities."[8]  The Appeals Council also noted that "the records regarding the claimant's eyesight are unclear" because "undated testing shows that ... she has 20/20 bilateral vision with correction...."[9]  The Appeals Council also found that it was error for the ALJ to conclude that plaintiff had no past relevant work as she in fact had "prior work history at all skill levels."[10]

The April 30, 2012 ALJ Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2025."[11]  The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[12]

---

[7]Admin. Rec. at 103-104.

[8]Admin. Rec. at 104.

[9]Admin. Rec. at 104.

[10]Admin. Rec. at 104.

[11]Admin. Rec. at 16.

[12]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since December 15, 2007, the alleged onset date...."[13]

At step two, the ALJ found that plaintiff had the "following severe impairments: obesity, diabetes mellitus; substance abuse; asthma; cataracts; and diverticulitis...."[14] The ALJ found that plaintiff did not have any severe medically determinable mental impairments. The ALJ noted that plaintiff had diagnoses of depression, post-traumatic stress disorder, anxiety, and bipolar disorder but that "the evidence actually does not

---

[12](...continued)
> severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[13]Admin. Rec. at 16.

[14]Admin. Rec. at 16.

document the requisite signs and symptoms of said mental disorders[.]"[15]  The ALJ also relied on the testimony of medical expert Dr. McKnight[16] to conclude that plaintiff's mental health diagnoses were incorrect.[17]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[15]Admin. Rec. at 23.

[16]Thomas McKnight, Ph.D., testified as a psychological expert at the March 23, 2012 hearing.  He testified that although plaintiff had mental illness diagnoses, these diagnoses were all based on self-reports and that based upon his review of plaintiff's mental health records,

> the primary issue here is 12.09 [the listing for Substance Addiction Disorders].  Ongoing cannabis use can cause anxiety.  Her presentation today is that it actually reduces her anxiety.  It can.  It can certainly dramatically increase presentation of anxiety, can certainly increase depressive episodes in an individual, and it can also result quite – in frank hallucinations and delusional thinking over a long period of time.  So I really can't find anything that substantiates that she has an anxiety related disorder such as would come under 12.06, although she's receiving medication for that.  But the peoples prescribing the medication have not documented any kind of signs that they have observed the characteristics that she's reporting, and [Dr. Bottrell's] evaluation ... didn't go far enough into the examination to look at personality dynamics and other such functions.  So we're stuck at this point, I think, with 12.09[.]

Admin. Rec. at 48-49.

[17]Admin. Rec. at 19.

impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[18] The ALJ paid particular

attention to Listing 3.00 (Respiratory System) and Listing 5.00 (Digestive System).[19] The

ALJ also considered Listings 12.04 (Affective Disorder) and 12.09 (Substance Addiction

Disorders).[20] The ALJ considered whether plaintiff met the "paragraph B" criteria and

found that plaintiff had no restrictions in activities of daily living; mild difficulties in social

functioning when abusing cannabis but would have no difficulties if she stopped abusing

cannabis; mild-to-moderate difficulties as to concentration, persistence, or pace when

abusing cannabis but would have no difficulties if she stopped abusing cannabis; and had

no episodes of decompensation when abusing cannabis and if she stopped abusing

cannabis, would continue to experience no episodes of decompensation.[21]

"Between steps three and four, the ALJ must, as an intermediate step, assess the

claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009).

The ALJ found that plaintiff "has the residual functional capacity to perform light work

as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant is limited to

occasional climbing of ramps and stairs, stooping, kneeling, crouching and crawling; no

---

[18]Admin. Rec. at 19.

[19]Admin. Rec. at 20.

[20]Admin. Rec. at 20.

[21]Admin. Rec. at 20.

climbing of ladders, ropes or scaffolds; [and] the avoidance of concentrated exposure to extreme cold, unprotected heights, and airborne irritants such as fumes, odors, dust and gases."[22]

The ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms" less than credible.[23]   As for plaintiff's physical impairments, the ALJ found plaintiff's symptom statements less than credible because plaintiff had sought very little treatment and when she "did receive treatment, it was generally conservative and the objective findings were consistently minimal."[24]  The ALJ also noted that no treating or examining physician had "ever identified any significant functional loss with respect to the claimant's various physical impairments, which significantly limit her ability to perform basic work activities."[25]

The ALJ found plaintiff's symptom statements as they related to her mental impairments less than credible because she "is independent in her everyday activities and personal matters, spends time with others, and attends hockey games on a regular basis."[26] The ALJ also noted that "no treating or examining physician has ever identified any

---

[22]Admin. Rec. at 21.

[23]Admin. Rec. at 22-23.

[24]Admin. Rec. at 23.

[25]Admin. Rec. at 23.

[26]Admin. Rec. at 24.

significant functional loss with respect to the claimant's mental impairments, which significantly limit her ability to perform basic work activities."[27]

The ALJ also found plaintiff's symptom statements less than credible because they were inconsistent with her own statements and reported activities of daily living.[28] Specifically, the ALJ noted that plaintiff claimed she was limited in her "ability to lift, walk, climb stairs, see, remember, concentrate and get along with others", but that plaintiff stated that "she is able to cook meals, go shopping, and do housework on a regular basis" which indicates a "good ability to lift, walk, see, and concentrate."[29] The ALJ also noted that plaintiff "stated that she is able to watch TV and use the computer on a regular basis, indicating good visual acuity."[30]

The ALJ also found that plaintiff had "been most inconsistent in her presentation of facts."[31] The ALJ specifically mentioned that plaintiff's statements about her suicide attempts were inconsistent because in February 2011, she claimed she had attempted

---

[27]Admin. Rec. at 24.

[28]Admin. Rec. at 24.

[29]Admin. Rec. at 25.

[30]Admin. Rec. at 25.

[31]Admin. Rec. at 25.

suicide four times, but in July 2011, she claimed she had attempted suicide fifteen times.[32]

The ALJ also noted that plaintiff claimed she had a fear of crowds but "the evidence clearly

shows the claimant attends hockey games on a regular basis, indicating a good ability to

be in crowded places."[33]   The ALJ also noted that Dr. McKnight testified to a "possible

magnification of symptoms on the part of the claimant[.]"[34]

The ALJ gave Dr. Kohnen's[35] opinion significant weight because it was "consistent

---

[32]Admin. Rec. at 25.

[33]Admin. Rec. at 25.

[34]Admin. Rec. at 25.

[35]On July 19, 2011, Elizabeth Kohnen, MD, an examining source, opined that plaintiff's " hypertension, hyperlipidemia, [and] diabetes ... appear[] to be fairly well-controlled [and her] asthma ... seems to be controlled at least now[.]"  Admin. Rec. at 614. Dr. Kohnen noted that plaintiff had

> low back pain with possible left-sided radiculopathy, recurrent diverticulitis, right sided esophoria with an inconsistent Snellen (even if she could only see with her left eye, her vision with both eyes should not be worse than that of her left eye), possible cataract, headaches and possible depression.  She has seen another evaluater [sic] for these psychiatric symptoms.  I don't think she is at her maximum medical improvement but I don't think she is far off–maybe could have better vision with cataracts removal or different glasses, may have recurrent diverticulitis that could be helped with surgery, et cetera.
>
> It's my medical assessment she [is] able to do work related activities including sitting, standing and moving about for short periods, light lifting and carrying, handling objects, speaking, and traveling.  She appears to be able to maneuver

(continued...)

with the overall record as a whole and the claimant's demonstrated functional abilities."[36]

The ALJ gave significant weight to the opinion of Dr. Lewy[37] for the same reason. The ALJ

gave no weight to the opinions of Dr. Evans[38] and Dr. Bottrell[39] "concerning the claimant's

---

[35](...continued)
> but not read with her vision currently. In our short time
> together, her psychiatric problems do not seem limiting.

Admin. Rec. at 614.

[36]Admin. Rec. at 25.

[37]On March 24, 2009, Dr. Lewy opined that plaintiff had mild restrictions of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. Admin. Rec. at 560. He also opined that plaintiff had had no repeated episodes of decompensation. Admin. Rec. at 560. Dr. Lewy opined that plaintiff's mental impairments "appear[] non-severe." Admin. Rec. at 562.

[38]Melinda Evans, M.D. treated plaintiff from April 25, 2006 through November 29, 2009. Admin. Rec. at 369-372, 375-388, 393-394, 491-492 & 588-591. Dr. Evans diagnosed plaintiff with depression and bipolar disorder.

[39]On July 14, 2011, Jil Diane Bottrell, Ph.D., did a psychological evaluation. Dr. Bottrell's diagnostic impression was that plaintiff

> currently reports symptoms of depression, anxiety, and anger.
> These symptoms are on occasion sufficiently prominent to
> interfere with her ability to interact appropriately with the
> public in a social or a work situation without problems
> resulting. Her memory and understanding appears to be
> minimally limited, if at all. Her ability to maintain sustained
> concentration and persistence is moderately limited, particu-
> larly in areas of ability to work in coordination with or proxim-
> ity to others without being distracted by them and ability to
> complete a normal workday and workweek without interrup-
> tions from psychologically based symptoms and to perform at

(continued...)

mental impairments, as their various diagnoses are based solely on the claimant's subjective complaints and unsupported by any objective medical signs or laboratory findings."[40]  The ALJ gave significant weight to the opinion of  Dr. McKnight.[41]  The ALJ

---

[39](...continued)

> a consistent pace without an unreasonable number and length of rest periods.  Her limitations in the area of social interactions appear by her report to be significant at present or in the recent past.  She stated that her current psychotropic medications are reducing the frequency and severity of her emotional problems, and she is in hopes that the counseling will be of further assistance.  The type and extent of any disability resulting from her vision problems can best be quantified by her medical providers.   Intelligence testing results suggests no major deficits in her cognitive ability.  Her Verbal IQ is in the Average range, her Performance IQ is in the Superior range, and her overall IQ of 112 is in the High Average range.

Admin. Rec. at 604.  Dr. Bottrell also completed a Medical Source Statement in which she opined that plaintiff had no impairments in terms of her ability to understand, remember, and carry out instructions; moderate limitations in her ability to interact appropriately with the public, supervisors, and co-workers; and mild limitations in her ability to respond appropriately to usual work situations and to changes in routine work environment. Admin. Rec. at 606-607.  Dr. Bottrell noted that plaintiff's "current marijuana use may affect motivation."  Admin. Rec. at 607.

[40]Admin. Rec. at 25.

[41]Admin. Rec. at 26.  Dr. McKnight testified that the record indicated that plaintiff had no cognitive limitations and no significant difficulties in terms of social interaction

> depending on the amount of cannabis she's using in conjunction with the prescription medication she's taking.  She might have a mild problem in that area.  Her ability to complete tasks in a timely manner, again, is going to fluctuate, maybe from

(continued...)

gave some weight to the lay opinions of Mr. Graham,[42] Ms. Elvsaas,[43] and Ms. Gifford[44] but not significant weight because their opinions are "not based on medical expertise and likely reflect[] the claimant's symptomatological exaggerations."[45]

At step four, the ALJ found that plaintiff "is capable of performing past relevant work as an activities coordinator, social services aide, bookkeeper, craft demonstrator, and cashier."[46] This finding was based on the testimony of the vocational expert.[47]

Although the ALJ was not required to, he made alternative step five findings. The ALJ found that "there are other jobs that exist in significant numbers in the national

---

[41](...continued)
> mild to moderate depending on the amount of cannabis she's using and the amount of medication she's taking.

Admin. Rec. at 49.

[42]James Graham, Jr., plaintiff's fiancé, completed third-party function reports on December 27, 2008 and December 13, 2010. Admin. Rec. at 276-283 & 320-322.

[43]Marie Elvsaas, plaintiff's sister, completed third-party function reports on January 19, 2009 and December 21, 2010. Admin. Rec. at 284-291 & 326.

[44]Melissa Gifford, plaintiff's neighbor, completed a third party function report on May 7, 2009. Admin. Rec. at 292.

[45]Admin. Rec. at 26.

[46]Admin. Rec. at 26.

[47]Admin. Rec. at 26. Daniel Labrosse testified as the vocational expert at both administrative hearings.

economy that the claimant can also perform...”[48]  These jobs included ticker taker, children's attendant, and agricultural produce sorter.[49]

The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from December 15, 2007, through the date of this decision...."[50]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id.  If the evidence is susceptible to more than one reasonable

---

[48]Admin. Rec. at 27.

[49]Admin. Rec. at 27.

[50]Admin. Rec. at 28.

interpretation, the court must uphold the Commissioner's decision. <u>Id.</u> But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999)).

<u>Discussion</u>

Plaintiff first argues that the court should use the October 27, 2010 decision, which was the fully favorable decision, as its "framework for decision."[51] Plaintiff contends that the concerns that the Appeals Council had regarding the October 27, 2012 favorable decision were either misplaced or have been corrected with the addition of more current medical evidence.

Review of the October 27, 2010 decision is denied. Such review would be improper as the October 27, 2010 decision is not defendant's final decision. The Social Security Act limits judicial review to "any final decision of the Commissioner ... made after a hearing." 42 U.S.C. § 405(g). To the extent that plaintiff is requesting that the court adopt the October 27, 2010 decision or to rely solely on it in reviewing defendant's final decision, that too is an improper request. Although the October 27, 2010 decision is part of the record, the court reviews the entire record to see if defendant's benefits decision is supported by substantial evidence and based on the application of correct legal standards.

---

[51]Reply Brief of Plaintiff Sharon Burt at 2, Docket No. 24.

Turning then to the decision under review, which is the ALJ's April 30, 2012 decision, plaintiff argues that the ALJ erred at step two by failing to include right eye blindness as a severe impairment. "The step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals ability to work.'" Id. (quoting SSR 85–28). Plaintiff argues that the medical record establishes that she was blind in the right eye and she cites to Dr. Walker's testing which showed that plaintiff's uncorrected vision in her right eye was 20/200 in 2003 and 20/400 in 2004.[52]

Assuming that the ALJ erred in not including plaintiff's right eye blindness as a severe impairment, that error was harmless. An error is harmless if it is "'inconsequential to the ultimate nondisability determination.'" Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)). There is no medical evidence in the record that plaintiff's blindness in her right eye causes her any functional limitations. Rather, the evidence is to the contrary. Dr. Bottrell observed that "[d]espite her vision problems, [plaintiff] excelled on two Performance tests

---

[52]Admin. Rec. at 330.

which require attention to visual detail."[53]  And, Dr. Kohnen found that plaintiff had 20/70

vision with both eyes at 20 feet and 20/50 vision with both eyes at near point.[54]  In addition,

at step four, the ALJ noted that even if plaintiff were limited to verbal instructions, she

would still be able to perform her past relevant work as a cashier and craft demonstrator.[55]

Plaintiff next argues that the ALJ erred at step two by not including any of her

mental impairments as severe impairments.  "A severe mental or physical impairment

must result from anatomical, physiological, or psychological abnormalities which can be

shown by medically acceptable clinical and laboratory diagnostic techniques, and

established by medical evidence consisting of signs, symptoms, and laboratory findings,

not only by the claimant's statement of symptoms."  Enich v. Colvin, Case No. C13–0721-

RSM, 2014 WL 201875, at *2 (W.D. Wash. Jan. 17, 2014).  "'[W]hen mental illness is the basis

of a disability claim, clinical and laboratory data may consist of the diagnoses and

observations of professionals trained in the field of psychopathology.'"  Sanchez v. Apfel,

85 F. Supp. 2d 986, 992 (C.D. Cal. 2000) (quoting Christensen v. Bowen, 633 F. Supp. 1214,

1220-21 (N.D. Cal. 1986)).  "In determining whether a claimant's impairments are severe

at step two, the ALJ evaluates the medical evidence and explains the weight given to the

---

[53]Admin. Rec. at 604.

[54]Admin. Rec. at 615.

[55]Admin. Rec. at 26.

opinions of acceptable medical sources in the record." <u>Rodriguez v. Astrue</u>, Case No. CV–11–03083–CI, 2013 WL 500124, at *4 (E.D. Wash. Feb. 8, 2013).

The ALJ found that plaintiff's mental impairments were not severe medically determinable impairments because "the evidence actually does not document the requisite signs and symptoms of [plaintiff's] mental disorders[.]"[56] The ALJ acknowledged that plaintiff had been diagnosed with depression, anxiety, bipolar disorder, and post-traumatic stress disorder.[57] But, the ALJ found that these diagnoses "were based purely on the claimant's subjective complaints, as the medical evidence documents no mania and/or hypermania, no problems concentrating, no agitation or irritation, no delusions, no startled response, no withdrawal or refusal to discuss an issue, no acute deterioration of action, and no slowed thinking or rapid speech."[58] More specifically, the ALJ expressly rejected the diagnoses of Dr. Evans and Dr. Bottrell.[59]

---

[56]Admin. Rec. at 23.

[57]Admin. Rec. at 23.

[58]Admin. Rec. at 24.

[59]In his discussion of his step two findings, the ALJ discussed Dr. Evans' treatment, Dr. Bottrell's evaluation and opinion, and Dr. McKnight's testimony at the hearing. Admin. Rec. at 17-19. In his discussion of his RFC findings, the ALJ discussed the diagnoses made by Drs. Evans and Bottrell and assigned weight as to the opinions of these three medical providers. Admin. Rec. at 25-26. In viewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755 (9th Cir. 1989). It is reasonable to
(continued...)

Dr. Evans diagnosed plaintiff with bipolar disorder and depression and Dr. Bottrell diagnosed plaintiff with major depressive disorder, post-traumatic stress disorder, and anxiety disorder NOS. The ALJ gave "no weight" to these diagnoses because they were based on plaintiff's subjective complaints, which the ALJ found less than credible, and because they were inconsistent with Dr. McKnight's opinion.[60]

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)). "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)). Here, the ALJ was required to give specific and legitimate reasons for rejecting Dr. Evans' and Dr. Bottrell's diagnoses that plaintiff suffered from mental impairments that could be considered severe.

Plaintiff argues that Dr. McKnight's opinion could not constitute substantial

---

[59](...continued)
infer that the ALJ's reasoning in his RFC discussion applied to his step two findings as well.

[60]Admin. Rec. at 25-26.

evidence for rejecting these diagnoses because a non-examining source's opinion which is based on the same clinical findings as treating or examining sources cannot by itself be substantial evidence supporting the rejection of a treating source's opinion. Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007). But, the ALJ did not rely solely on Dr. McKnight's opinion to reject Dr. Evans' and Dr. Bottrell's diagnoses. The ALJ also rejected their diagnoses because they were based solely on plaintiff's subjective complaints.

As to this reason, the ALJ did not err in rejecting Dr. Evans' diagnoses of bipolar disorder and depression because these diagnoses appear to have been based solely on plaintiff's subjective complaints. But, the ALJ did err as to Dr. Bottrell's diagnoses. Dr. Bottrell's diagnoses were not based solely on plaintiff's self-reports but rather were based on Dr. Bottrell's observations and testing.[61] In addition, Dr. Crafton,[62] based on his observations and a mental status exam, diagnosed plaintiff with post-traumatic distress disorder, chronic; bipolar II disorder, depressed, severe without psychotic features;

---

[61]Dr. Bottrell conducted a "clinical interview" with plaintiff and "administered the Wechsler Adult Intelligence Scale-III" to plaintiff. Admin. Rec. at 601.

[62]Clifford Crafton, MD, PhD, evaluated plaintiff on July 17, 2012, which was after the ALJ issued his decision. Admin. Rec. at 638-641. The Appeals Council considered Dr. Crafton's examination but found that it did not "provide a basis for changing the [ALJ's] decision. Admin. Rec. at 1-2. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of Social Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012).

cannabis abuse; hallucinogen abuse, in remission for over 25 years; and cocaine abuse, in remission for over 25 years.[63]  In short, the ALJ erred in finding that plaintiff did not have medically determinable severe mental impairments.

The ALJ's error in finding plaintiff's mental impairments non-severe was not harmless.  Both Dr. Bottrell and Dr. Crafton opined that plaintiff had functional limitations flowing from her mental impairments.  Dr. Bottrell opined that plaintiff had moderate limitations in her ability to interact appropriately with the public, supervisors, and co-workers; and mild limitations in her ability to respond appropriately to usual work situations and to changes in routine work environment.[64]  Dr. Crafton opined that "it would prove exceedingly difficult for [plaintiff] to work where she has any contact with the public."[65]  There is no evidence in the record as to whether plaintiff would be able to do her past relevant work or any other work with the limitations assessed by Dr. Bottrell and Dr. Crafton.  Thus, consideration of Dr. Bottrell's and Dr. Crafton's opinions could have affected the ALJ's ultimate disability determination.

Plaintiff next argues that the ALJ failed to fully and fairly develop the record.  "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record

---

[63]Admin. Rec. at 640.

[64]Admin. Rec. at 607.

[65]Admin. Rec. at 640.

and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288). "When", as here, "the claimant is unrepresented," at the hearing, "the ALJ must be especially diligent in exploring for all the relevant facts." Id. "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." Id. Plaintiff argues that the ALJ failed to quantify her marijuana use or clarify the mode of intake at the hearing,[66] yet then relied on Dr. McKnight's opinion which was based, in large part, on plaintiff's cannabis use.

The duty to fully and fairly develop the record "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). The evidence regarding plaintiff's cannabis use was not ambiguous. Plaintiff told two providers in 2011 that she smoked it every day if she could and she told another provider in 2012 that she smoked it 2-3 times per week. The ALJ did not fail to fully and fairly develop the record as to plaintiff's cannabis use.

Plaintiff also claims that her due process rights were violated because the second ALJ was biased against her. "To succeed in this claim, [plaintiff] must show that 'the ALJ's behavior, in the context of the whole case, was so extreme as to display clear inability to

---

[66]Plaintiff was not represented by counsel at either hearing.

render fair judgment.'" <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1214-15 (9th Cir. 2005) (quoting

<u>Rollins v. Massanari</u>, 261 F.3d 853, 858 (9th Cir. 2001)). The court "must begin with a

presumption that the ALJ was unbiased." <u>Id.</u> Plaintiff "can rebut this presumption by

showing a '"conflict of interest or some other specific reason for disqualification.'" <u>Id.</u> at

1215 (quoting <u>Schweiker v. McClure</u>, 456 U.S. 188, 195 (1982)). Plaintiff has not pointed to

anything specific that would indicate that the ALJ was biased against her.

Finally, plaintiff asks the court to affirm the ALJ's finding that her last insured date

is December 31, 2025, which was probably an incorrect date. The court declines to make

a ruling one way or the other on this issue because the decision under review was made

prior to the expiration of plaintiff's insured status.

Because the ALJ erred at step two, the court must consider whether to remand for

further proceedings or for an award of benefits. "Remand for further administrative

proceedings is appropriate if enhancement of the record would be useful." <u>Benecke v.</u>

<u>Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the

record has been developed fully and further administrative proceedings would serve no

useful purpose, the district court should remand for an immediate award of benefits." <u>Id.</u>

Here, a remand for further proceedings is appropriate so the ALJ can consider what impact

plaintiff's mental impairments and the limitations flowing from them have on her ability

"to engage in any substantial gainful activity...." 42 U.S.C. § 423(d). In the final decision

of defendant, the ALJ stated that plaintiff had to prove disability by showing that she was unable "to engage in any and all work activities."[67]  The ALJ also made repeated reference to an "ability to perform basic work activities" and an "ability to engage in basic work activities."[68]  These references created the impression that the ALJ was requiring plaintiff to prove that she was totally incapacitated, which is not the standard for finding disability. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits").  The ALJ shall take care, on remand, to apply the correct legal standard to plaintiff's claim for disability.

Conclusion

Based on the foregoing, the decision of the Commissioner is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 28th day of May, 2014.

/s/ H. Russel Holland
United States District Judge

---

[67]Admin. Rec. at 23.

[68]Admin. Rec. at 23-25.